

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

ENTERED
08/02/2010

| | | |
|---|---|---|
| IN RE: | § | **Case No. 10-31760** |
| **ELITE BAYWOOD, LP; dba BAYWOOD** | § | **Chapter 11** |
| **ARMS APARTMENTS** | § | |
| **and** | § | |
| **ARTHUR SQUARE APARTMENTS, LP,** | § | |
| | § | |
| **ARTHUR SQUARE APARTMENTS, LP;** | § | **CASE NO: 10-31774** |
| **aka 2006 ARTHUR SQUARE** | § | |
| **APARTMENTS, LP; dba POOLE AVENUE** | § | |
| **APARTMENT HOMES; fka ARTHUR** | § | |
| **SQUARE APARTMENTS; fka FAIRWAY** | § | |
| **PLAZA, LLC** | § | |
| | § | **Jointly Administered Order** |
| Debtor(s). | § | **Judge Isgur** |

## ORDER AND MEMORANDUM OPINION

For the reasons set forth below, the Court denies Arthur Square's motion for reconsideration. The Court finds, however, that Elite Baywood substantially complied with the cash collateral order, and the Court therefore grants, with respect to Elite Baywood, the July 1, 2010 motion for determination that Debtors were not in default.

## Background

Elite Baywood, LP and Arthur Square, LP are related partnerships that own and operate apartment buildings in Baytown, Texas, and Port Arthur, Texas. On March 1, 2010, the two entities filed jointly administered chapter 11 bankruptcy cases. Each case was filed to avoid foreclosure of the properties by First National Bank.

On March 5, 2010, the Debtors moved for approval of interim and final use of the cash collateral of First National Bank, stating that they needed the cash collateral for expenses incurred in the ordinary course of business. Elite Baywood and Arthur Square proposed to adequately protect First National Bank by granting replacement liens.

At a hearing on May 7, 2010, the Court granted the motion. (Doc. No. 77.) The Court conditioned the use of the cash collateral on the Debtors' compliance with several provisions, including requirements to make escrow payments, to provide a cash basis report detailing all collected revenues and expenses paid, to supplement the Debtors' income each month if the Debtors failed to meet their income projections, and to expend, each month, a required amount on capital expenses and minimum make ready amounts to improve the property and increase its profitability.

On June 30, 2010, the Debtors received a voice mail from First National Bank informing them that the Debtors were in default on the cash collateral order and that First National Bank

would conduct foreclosures on July 6, 2010. The Debtors filed an emergency motion for a determination that they were not in default on the cash collateral order. (Doc. No. 105.) The Bank alleged that the Debtors had violated the following requirements of the cash collateral order: (1) the requirement to supplement income shortfalls by making deposits to the Debtors' accounts and providing a report to the Bank with copies of any checks or wire transfers comprising the deposits; (2) the requirement to provide monthly reports to the Bank with a list of all payments for the reporting month, reflecting the name of each payee, the amount of the payment, and the corresponding check number; (3) the requirement to keep all expenditures within the amounts provided in their budgets; and (4) the requirement to expend a minimum amount on capital expenses.

In a hearing on July 6, 2010, the Court denied the motion as to Arthur Square, finding that Arthur Square had violated the terms of the cash collateral order by failing to make the required capital expenditures. The Court ordered briefing on whether Elite Baywood had substantially complied with the cash collateral order. Both the Debtors and First National Bank filed briefs, and the Debtors also requested that the Court reconsider its ruling with respect to Arthur Square.

## Arthur Square's Motion for Reconsideration

The Court denies Arthur Square's motion for reconsideration of the decision denying relief under its motion filed on July 1, 2010 seeking a determination that Arthur Square was not in default of the Court's May 7, 2010 cash collateral order.

The Court's May 7, 2010 order authorizing use of cash collateral was issued after an extended evidentiary hearing[1] that was conducted on April 16, 2010.

Arthur Square had an abysmal economic occupancy rate at the time of the April 16th cash collateral hearing. By the most optimistic viewpoint, economic occupancy of the apartments was less than 50%. Arthur Square had owned the property since April 1, 2007 and failed to manage the property properly. Many units were not maintained and were not in rentable condition. On the date of its acquisition of the property, Arthur Square had retained a third party to manage the property that had neglected its responsibilities. However, approximately two years ago, Arthur Square terminated the third party manager, and began managing the property with its own affiliate. Arthur Square, acting through its affiliate, was unable to improve occupancy or to prepare units for rental. After two years since terminating the third party manager, Arthur Square has failed to turn the apartment property into a viable economic operation.

At the April 16, 2010 hearing, Arthur Square presented substantial evidence—credited by the Court—that occupancy and income would increase if capital could be expended to renovate the unoccupied units.

After considering the evidence, the Court issued a unique order with respect to cash collateral. The Court held that the Bank's interest in the cash collateral could only be adequately

---

[1] The hearing commenced at 9:15 a.m. and concluded at 6:30 p.m. There were interruptions during the day.

protected if, among other things, Arthur Square expended minimum monthly amounts to renovate the property. Without the expenditure of minimum monthly amounts, the Court concluded that the apartments would continue to languish and that the Bank would not have adequate protection. The requirement of an expenditure of a minimum threshold amount on capital improvements was the core of the Court's ruling. The minimum amounts were established at the amounts and times requested by Arthur Square.

Nevertheless, in the first full month following the hearing, Arthur Square fell $12,000 short (about 30% of the total) of the minimum threshold expenditures. The Debtor has excuses for this, but none of them constitute excusable neglect. The Court must consider four factors in determining whether a failure to comply with a deadline in a court order constitutes excusable neglect: whether the delaying party acted in good faith, the extent of prejudice, the length of the delay, and the reason for delay. *Greyhound Lines, Inc. v. Rogers (In re Eagle Bus Mfg., Inc.)*, 62 F.3d 730, 737 (5th Cir. 1995).

The first issue is whether Arthur Square acted in good faith when it fell some $12,000 short on a $40,000 budget. The Court concludes that Arthur Square did not act in good faith. When Arthur Square could not make the $40,000.00 budget, it wrote (but did not mail) a check to Whirlpool Appliances for $12,000.00. Arthur Square then reported to the Bank that it had spent the full $40,000. This was done in order to feign compliance with the deadline. This was an act of bad faith, not of good faith.

The second issue is the extent of prejudice. There is prejudice to both parties from the failure. There is prejudice to Arthur Square because it has caused its equity owners to infuse post-petition capital that will now be lost. More importantly, there is prejudice to the Bank because Arthur Square is failing to meet its own standards for renovating the property. The core of the Court's adequate protection has failed. The Bank had the right to rely on the adequate protection order, and it needed the protection afforded by the order. On balance, the prejudice to the Bank far outweighs the prejudice to the equity holders.

The third issue is the length of delay. The check was eventually sent to Whirlpool about 3 weeks late. In the context of the cash collateral order and the substantive requirement to renovate the units, the Court finds this to be a material delay.

The fourth issue is the reason for the delay. Arthur Square argues that it thought that it could purchase the appliances from Whirlpool for cash without any credit or other approval by Whirlpool. Therefore, it waited until the very end of the month to make the purchases. However, Arthur Square's employees had cautioned against this conduct, advising that Whirlpool might not sell the appliances without advance notice. Moreover, there was no reason for Arthur Square to wait until the end of the month, and Arthur Square's principal testified that he simply was too busy to address the issue earlier. Although it is a close call, the Court credits Arthur Square for the last-minute attempt and finds that the reason for the delay favors a finding of excusable neglect.

Taking the four factors as a whole, the decision is an easy one. Arthur Square failed timely to comply with the essence of the adequate protection provided to the Bank. It did so in

bad faith and in a manner that inflicted serious injury on the protection ordered by the Court. Arthur Square's last-minute attempts to comply with the Court's order—although considered by the Court—are insufficient to overcome the other factors.

### Elite Baywood's Substantial Compliance

The Court rules, however, that Elite Baywood substantially complied with the cash collateral order. First National Bank alleges that Elite Baywood violated the order in three ways: (1) it did not provide, by the third business day of the month, an email concerning supplemental revenue shortfalls; (2) it did not provide a list of all payments made during the reporting month showing the name of each payee, the amount of each payment, and the corresponding check numbers; and (3) it exceeded its budgeted amounts for contract services and utilities. In each case, Elite Baywood deviated from the exact letter of the cash collateral order, but it took reasonable steps to comply. The deviations were minor. There is no evidence that Elite Baywood acted with anything but good faith in its faulty attempts to comply. Elite Baywood substantially complied with the cash collateral order, and the termination of the cash collateral remains in force. Moreover, the Court finds and declares that no default will have occurred under the cash collateral order if Baywood complies with its provisions within 14 days of entry of this order, which compliance will serve to cure the prior alleged defaults.

Substantial compliance is an equitable doctrine. When a party fails to meet a strict court requirement, but has taken reasonable steps to comply, a bankruptcy court may use its broad equitable powers under 11 U.S.C. § 105(a) to recognize the party's substantial compliance. To determine whether the party has taken reasonable steps to comply, the court looks at whether the party expended reasonable diligence and energy to accomplish what the court ordered. *In re Temple*, 228 B.R. 896 (Bankr. N.D. Ohio 1998).

A finding of substantial compliance is equitable, and the court may take account of all relevant circumstances. *See Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993) (stating that court's determination of whether neglect of a bar date is excusable is an equitable determination that takes account of all relevant circumstances surrounding the party's omission). Several factors are relevant. The Court may consider the particular steps taken towards compliance and the success of those efforts. *See Peppers v. Barry*, 873 F.2d 967 (6th Cir. 1989) (finding substantial compliance where the parties engaged in significant efforts towards compliance and where the efforts had been successful).

The Court may also consider whether there is a justifiable excuse for the failure to comply. *See In re Eagle-Picher Indus., Inc.*, 285 F.3d 522, 529-30 (6th Cir. 2002) (listing the existence of a justifiable excuse among the factors to consider in determining whether a party has substantially complied with a notice requirement). A party has a justifiable excuse when the failure to comply was based on a reasonable misunderstanding. *See Eagle-Picher*, 285 F.3d at 530 (upholding the bankruptcy court's finding of substantial compliance where the party offered an excuse for failure to comply, and the excuse was based on a misunderstanding that another party was coordinating compliance with a notice requirement); *Temple*, 228 B.R. at 898 (finding substantial compliance where the party's failure to provide documentation in a timely fashion was based on a reasonable misunderstanding that the other party would cooperate in resolving

the matter).   Finally, the Court may consider the prejudice caused to the other party by the deviation from the requirement and the prejudice that would be caused to the deviating party if the court failed to find substantial compliance.

## 1.   Elite Baywood's Alleged Failure to Provide Email Notice Concerning Supplemental Revenue Shortfalls

First National Bank alleges that Elite Baywood violated the cash collateral order by failing to provide, by the third business day of the month, email notice concerning supplemental revenue shortfalls.  Elite Baywood was required, in case their income fell short of projections, to supplement the income and, "[u]pon deposit of the supplement," to email First National Bank with a copy of all checks or wire transfers comprising the deposit.  (Doc. No. 77, at 3.)  Elite Baywood did have an income shortfall for the month of May, and it was required to supplement the income by June 3, 2010.  Elite Baywood deposited the required supplement on June 3, 2010, but did not provide notice of the supplement to First National Bank until June 14, 2010.  Elite provided notice of the supplement in its financial report to the Bank, not in an email with copies of checks or wire deposits attached as the order required.

Elite Baywood's income supplement and notice through the financial report constituted substantial compliance with the order.  The income supplement was deposited on time, and providing notice through the financial report successfully provided the essential information, did not prejudice the Bank, and was based on a reasonable misunderstanding.  In May, Elite Baywood provided the same information, with similar timing, with regard to the April income supplement, and the Bank did not object.  Elite Baywood therefore reasonably misunderstood the notice requirement, and its failure to comply with the letter of the order was justifiable. Moreover, the Bank was not prejudiced either by the delay or by the form of the information.

The Court now notes, however, that the order requires notice in the form of an email with attached copies of the checks and wire transfers comprising the deposit, not in the form of a financial statement.   The order also requires Elite Baywood to provide notice of income supplements "upon deposit." The Court interprets this provision as requiring Elite Baywood to email the Bank on the same day as the deposit.  Elite Baywood therefore will not be justifiably excused from any further failure to comply with this provision.

## 2.   Elite Baywood's Failure to Provide a List of Checks

The Bank also alleges that Elite Baywood violated the order by providing, instead of a list of all checks for the month of May, the actual checks.  Although the required information would be more difficult to obtain from the actual checks than from an organized list, the checks contained all the information required by the order.  The Bank therefore was not seriously prejudiced by the deviation from the letter of the order.  Elite Baywood was also justifiably excused in deviating from the terms of the order.  Elite may reasonably have believed that providing the checks rather than a list of checks constituted over-compliance with the order. Elite's provision of the checks was a reasonable effort.  Elite therefore substantially complied with the requirement to provide a list of checks.  Elite is now on notice, however, that providing

checks rather than a list of checks does not meet the requirements of the order.  Future failure to comply with the order's requirement to provide a list of checks will not be justifiably excused.

**3.  Elite Baywood's Alleged Budget Excesses**

Finally, the Bank alleges that Elite Baywood violated the order by exceeding the amounts allowed under their budget for items other than capital expenses.  Elite's deviations from the budget amounts were minor, and Elite's efforts to stay within the budget amounts constituted substantial compliance with the order.  Moreover, the current cash collateral order does not make clear whether compliance with the budget limit must be on a line-by-line, category-by-category or total budget basis.  The cash collateral order is hereby modified to require compliance with the budget on a category-by-category basis.

<strong>Conclusion</strong>

Arthur Square's failure to expend the total amount for full turn capital expenses was a clear violation of the core requirement of the cash collateral order.  Arthur Square's motion to reconsider is therefore denied.  Elite Baywood's deviations from the order terms were, however, minor and justifiable.  Elite Baywood was in substantial compliance with the order, and no default will have occurred if Baywood corrects its prior deficiencies within 14 days of entry of this order.

SIGNED **August 2, 2010.**

Marvin Isgur
UNITED STATES BANKRUPTCY JUDGE